UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


COLONY BAY COAL COMPANY,

    Plaintiff

v.                                CIVIL ACTION NO. 2:03-2449

DISTRICT 17 and LOCAL UNION 9177,
UNITED MINE WORKERS OF AMERICA,

    Defendants


## MEMORANDUM OPINION AND ORDER

Pending are the parties' cross motions for summary judgment. In its motion filed April 9, 2004, plaintiff Colony Bay Coal Company ("Colony Bay") seeks vacatur of the September 16, 2003, arbitration award ("award") rendered by Jerome T. Barrett ("Arbitrator Barrett"). In their motion filed April 8, 2004, defendants ("union") seek enforcement.


I.


On December 12, 2003, Colony Bay instituted this action pursuant to Section 301 of the Labor Management Relations Act

("LMRA"), 29 U.S.C. § 185. The dispute arises out of Colony Bay's use of outside contractors or separate seniority units for the performance of mine face-up work. (Compl. ¶ 4). The parties are governed by the 2002 National Bituminous Coal Wage Agreement ("the Agreement"), a collective bargaining agreement effective from January 1, 2002, through December 31, 2006. (Pl.'s Mem. in Supp. at 2; Defs.' Mem. in Supp. at 2).

II.

Colony Bay ceased surface mining operations on its reserves in Boone County, West Virginia, sometime prior to the spring of 2003. (Pl. Mem. at 2). It continued, however, to perform reclamation work on the site through its bargaining unit employees. (Id.) Colony Bay subsequently contracted with a third party to open and operate a new underground coal mine on fresh reserves found on Colony Bay property. (Id.; Arbit. Decis. at 11). This venture required "face-up" work, which included the building of an access road and exposure of the coal seam. (Id.) Colony Bay assigned this work to non-bargaining unit employees rather than the bargaining unit employees then engaged in reclamation work. (Id. at 3.)

2

On June 3, 2002, union member Eddie Kincaid and twenty-five of his co-workers completed a standard grievance form.[1] (Arb. Dec. at 2). They alleged that Colony Bay's failure to use their services on the face-up work violated the Agreement. (Pl.'s Mem. in Supp. at 3; Arb. Dec. at 2). The matter proceeded to arbitration. (Pl.'s Mem. in Supp. at 3). On September 16, 2003, the award was rendered and the grievances were sustained based upon res judicata.

Arbitrator Barrett discussed prior awards issued respectively in 1994 and 2003 by Arbitrators Philip W. Parkinson ("the Parkinson award") and Neil L. Gundermann.[2] He additionally discussed Arbitration Review Board ("ARB") 78-24, which established that prior arbitration decisions can, absent exceptional circumstance, have preclusive effect. (Arb. Dec. at 4). Arbitrator Barrett concluded that the Parkinson award was res judicata on the matter before him, barring the use of outside contractors for face-up work. He additionally concluded,

---

[1] According to plaintiff and to the award, two identical grievances were filed on the same day.

[2] Arbitrator Gundermann concluded that he was bound by the Parkinson award based upon res judicata. He also noted the untimeliness of any challenge to the 1994 Parkinson award inasmuch as Colony Bay first challenged it in 2002 after having settled grievances based upon it between 1994 and 2002.

3

however, that the outcome would not have changed even in the absence of preclusion principles.

III.

A.   The Standard of Review

Our court of appeals has frequently identified the polar star guiding any court confronted with a vacatur or enforcement request:  "[J]udicial review of arbitration awards is extremely limited -- in fact, it is 'among the narrowest known to the law.'"  U.S. Postal Service v. American Postal Workers Union, AFL-CIO, 204 F.3d 523, 527 (4th Cir. 2000) (quoting Union Pac. R.R. v. Sheehan, 439 U.S. 89, 91 (1978) (internal quotation marks omitted); see also District 17, UMWA v. Island Creek Coal Co., 179 F.3d 133, 136-37 (4th Cir. 1999); Westvaco Corp. v. United Paperworkers Int'l Union AFL-CIO, 171 F.3d 971, 974 (4th Cir. 1999) ("Absent the most unusual of circumstances, courts must uphold and enforce arbitral awards."); Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc., 142 F.3d 188, 193 (4th Cir. 1998); Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Intern. Union, 76 F.3d 606, 608 (4th Cir. 1996) ("[T]he judiciary is to presumptively favor the award's validity. . . .[A]bsent any fraud

4

by the parties or dishonesty by the arbitrator, an arbitrator's findings should never be overturned."); Island Creek Coal Co. v. District 28, UMWA, 29 F.3d 126, 129 (4th Cir. 1994); Norfolk & Western Ry. Co. v. Transportation Communs. Int'l Union, 17 F.3d 696, 700 (4th Cir. 1994); District 17, UMWA v. Apogee Coal Co., 13 F.3d 134, 138 (4th Cir. 1993); Zady Natey, Inc. v. United Food and Comm. Workers Int'l Union, Local No. 27, 995 F.2d 496, 498 (4th Cir. 1993).

The court of appeals has likewise noted that "[w]hen the parties bargain for an arbitrator's construction of a contract, 'the courts have no business overruling him because their interpretation of the contract is different from his.'" United States Postal Serv. v. American Postal Workers Union, AFL-CIO, 204 F.3d 523, 527 (4th Cir. 2000) (quoting Enterprise Wheel, 363 U.S. at 599); see also District 17, 179 F.3d at 137; Westvaco, 171 F.3d at 975; Island Creek, 29 F.3d at 129; Zady, 995 F.2d at 497-98. "Indeed, 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'" U.S. Postal, 204 F.3d at 527 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987));

5

see also Rock-Tenn Co. v. United Paperworkers Int'l Union AFL-CIO, 184 F.3d 330, 337 (4th Cir. 1999) (observing "A court 'should not reject an award on the ground that an arbitrator misread the contract" if "the arbitrator is even arguably construing or applying the contract.'") (quoted authority omitted); see also District 17, 179 F.3d at 137; Westvaco, 171 F.3d at 975; Champion Intern. Corp. v. United Paperworks Intern. Union, AFL-CIO, 168 F.3d 725, 728 (4th Cir. 1999); CSX Transp., Inc. v. United Transp. Union, 29 F.3d 931, 933, 938 (4th Cir. 1994); Norfolk & Western, 17 F.3d at 700; Zady, 995 F.2d at 497-98. Among other things, the court is bound to unquestioningly accept the arbitrator's factual findings. District 17, 179 F.3d at 138.

The supporting rationales behind this laissez-faire policy are quite compelling. For example, "[i]f courts were allowed to delve into the merits of an arbitration award, then the federal policy of settling labor disputes by arbitration would be seriously undermined." U.S. Postal, 204 F.3d at 527; see United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960); see also District 17, 179 F.3d at 137; Westvaco, 171 F.3d at 974, 977. A review and enforcement scheme that employed "'judicial second-guessing . . . would transform a

6

binding process into a purely advisory one, and ultimately impair the value of arbitration for labor and management alike.'" U.S. Postal, 204 F.3d at 527 (quoting Westvaco, 171 F.3d at 974 (some internal quotation marks omitted)); Apex, 142 F.3d at 193.

As one might gather from the foregoing discussion, "[a] court sits to 'determine only whether the arbitrator did his job -- not whether he did it well, correctly, or reasonably, but simply whether he did it.'" U.S. Postal Service v. American Postal Workers Union, AFL-CIO, 204 F.3d 523, 527 (4th Cir. 2000) (quoting Mountaineer Gas, 76 F.3d at 608. In Mountaineer Gas, our court of appeals provided guidance for a reviewing court attempting to determine if the job was done:

> When determining whether the arbitrator did his job, this court examines: (1) the arbitrator's role as defined by the CBA; (2) whether the award ignored the plain language of the CBA; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the CBA's proscribed limits.

Mountaineer Gas, 76 F.3d at 608.

Despite the admonition to tread lightly during the review process, implicit in these three guideposts from Mountaineer Gas is the fact that the deferential review process is yet infused with some limits. One paramount consideration for a reviewing court is the rule that the contents of the applicable

collective bargaining agreement control, without supplementation by the arbitrator.[3] See U.S. Postal, 204 F.3d at 530, 527 ("Parties to a collective bargaining agreement get what they bargain for -- no less and no more. If the APWU wished probationary employees to have access to the grievance procedure to challenge a separation, it could have bargained for such a right. Indeed, the APWU remains free to bargain for this right in the future. But the APWU cannot gain through arbitration what it could not acquire through negotiation."); Westvaco, 171 F.3d at 978; Mountaineer Gas, 76 F.3d at 608.

Our court of appeals has additionally observed that an arbitrator's award "'is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.'"

---

[3]Our court of appeals, however, has not limited arbitrators to the explicit language of the contract, recognizing the interpretive role of the neutral arbiter. See Rock-Tenn Co., 184 F.3d at 337 (upholding arbitration award because "The collective bargaining agreement can fairly be read as the arbitrator interpreted it . . . ."); Norfolk & Western Ry. Co. v. Transportation Communs. Int'l Union, 17 F.3d at 701 ("This assumption of an incidental power was well within the Board's discretion, as the parties had effectively ceded to the arbitrators the task of defining the scope of their power by providing in the contractual language little guidance to the arbitrators as to their powers.").

8

U.S. Postal, 204 F.3d at 527 (4th Cir. 2000) (quoting Enterprise Wheel, 363 U.S. at 597); see also District 17, 179 F.3d at 137; Westvaco, 171 F.3d at 975; Champion, 168 F.3d at 728; Island Creek, 29 F.3d at 129.

At its core, the requirement that the award draw its essence from the parties' agreement means that "'[t]he arbitrator may not ignore the plain language of the contract.'" U.S. Postal, 204 F.3d at 527 (quoting Misco, 484 U.S. at 38); Champion, 168 F.3d at 729 ("One way to test the validity of an arbitration award on this basis is to ask 'whether the award ignored the plain language of the [collective bargaining agreement].'") (quoted authority omitted).

Hearkening back to the second factor of the Mountaineer Gas inquiry, "[w]hen the arbitrator ignores the unambiguous language chosen by the parties, the arbitrator simply fails to do his job." U.S. Postal, 204 F.3d at 527 (quoting Enterprise Wheel, 363 U.S. at 597); see also Mountaineer Gas, 76 F.3d at 610; Champion, 168 F.3d at 729; Norfolk & Western, 17 F.3d at 700. In sum, the arbitrator is "'confined to interpretation and application of the collective bargaining agreement.'" U.S. Postal, 204 F.3d at 527 (quoting Enterprise Wheel, 363 U.S. at 597); Champion, 168 F.3d at 728.

9

When an arbitrator strays from the language of the applicable collective bargaining agreement, he must face the specter that he allowed his personal views to interfere with his neutral role. Such an overspill is often fatal to an award, in view of the well-settled proposition that "[a]n arbitrator does not have carte blanche . . . to 'dispense his own brand of industrial justice.'" U.S. Postal, 204 F.3d at 527 (quoting Enterprise Wheel, 363 U.S. at 597); see also District 17, 179 F.3d at 137; Westvaco, 171 F.3d at 975; Champion, 168 F.3d at 728; Mountaineer Gas, 76 F.3d at 610 ("By fashioning an entire new remedy and infusing his personal feelings and sense of fairness into the award, the arbitrator created an award that failed to draw its essence from the CBA . . . ."); Island Creek, 29 F.3d at 129.

In addition to the naked language of the applicable collective bargaining agreement, the arbitrator is also generally charged with considering accumulated arbitral precedent. See CSX Transp., 29 F.3d at 939 ("clear evidence of past practice and "common law of the industry" must be considered by the arbitrator."). This requirement is particularly significant in most coal arbitration cases in view of the inclusion of Article XXIII(k) within the Agreement:

10

> (k) Prior Agreement
>
> All decisions of the Arbitration Review Board [("ARB")] rendered prior to the expiration of the National Bituminous Coal Wage Agreement of 1978 shall continue to have precedential effect under this Agreement to the extent that the basis for such decisions have not been modified by subsequent changes in this Agreement.

(Agreement, Art. XXIII(k)[4]; see also District 17, 179 F.3d at 138 n.1 (observing that, via Article XXIII(k), ARB decisions are "[i]ncorporated into the" Agreement)[5]; Island Creek Coal Co. v. Local Union 1640, 28 F. Supp.2d 994, 998 (W.D. Va. 1998) (noting "the ARB decision . . . has the same authority as the language of the Agreement . . . ."); Clinchfield Coal Co. v. District 28, UMWA, 45 F. Supp.2d 513, 515 (W.D. Va. 1998) (stating under a

---

[4]One commentator has noted that "[t]his provision has contributed to the continuing uniformity of coal decisions." Calvin W. Sharpe, A Study of Coal Arbitration Under the National Bituminous Coal Wage Agreement Between 1975 and 1990, 93 W. Va. L. Rev. 497, 590 (1991). Although it experienced an abbreviated life span, the decisions of the ARB appear to have a positive and profound effect on arbitration under the Agreement. Id. at 502-03 ("While the ARB issued only 207 decisions during its seven year tenure, available evidence shows that the ARB was influential in producing greater consistency in arbitral decision making under the Agreement. The residual influence of ARB decisions has continued and increased since the expiration of the 1978 Agreement. . . . Remarkable is the residual impact of ARB precedents, reflected in the increasing adherence of panel arbitrators to those decisions since 1981.").

[5]District 17 is the only published decision from our court of appeals that discusses Article XXIII(k).

11

nearly identical provision that "ARB decisions apparently are binding precedent.").

Nevertheless, when confronted with an allegation that an arbitrator intentionally ignored binding precedent, a reviewing court may consider whether the omission was in fact of the significance attributed to it by the challenger. See District 17, 179 F.3d at 141 (4th Cir. 1999) ("Because the facts on which these two arbitrators made their determinations were not the same, we find that ARB 78-24 was inapplicable here. Arbitrator Ross was correct in making his own factual findings and fashioning a unique award. The facts with which he was presented were unique and required individual treatment. . . . Because we think ARB 78-24 did not apply here, Arbitrator Ross' refusal to rely on it was proper and does not prove that his award was premised on his own notions of justice.").

One further consideration is apropos in the review and confirmation setting. District 17 observed that concepts of waiver play a role once the case reaches the district court. District 17, 179 F.3d at 140 ("This Court has held that when a party consents to arbitration it cannot attack the award on grounds not raised before the arbitrator.").

B.  The Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In opposing each other's motion for judgment, neither Colony Bay nor the union identifies any extant genuine issues of material fact.

IV.

Colony Bay's Contentions and Their Analysis

Colony Bay asserts the award is subject to vacatur on four separate grounds, namely (1) the res judicata analysis is inconsistent with ARB 78-24, (2) the award is contrary to and ignores ARB 78-60, (3) the award impermissibly fashions a remedy that is (a) beyond the subject of the grievance, and (b) contrary to public policy. Each challenge is discussed in turn.

13

1. Res Judicata

Colony Bay contends that Arbitrator Barrett improperly treated the Parkinson award as preclusive in the instant controversy. ARB 78-24, authored by Paul Selby Jr., discusses at length the concept of preclusion in coal arbitration cases. His syllabus provides as follows:

> When a subsequent grievance arises between the same parties, at the same operation, on the same fact situation, and involving the same issues of contract interpretation and application as presented in the former grievance decided by the prior award, then the principle of arbitral res judicata as explained in Part II, is to be applied and controls the award in the subsequent case, except for the narrow and limited situations described next, even though the arbitrator would not have decided in that fashion had he been presented the prior case.
>
> Where the arbitrator is clearly and convincingly persuaded by the evidence and arguments of the parties before him that a prior award is so plainly and palpably erroneous that it should not be applied, he may refuse to apply the principle of arbitral res judicata. However, unless clearly and convincingly persuaded that:
>
> > (a) The previous award was clearly an instance of bad judgment;
> >
> > (b) The decision was made without benefit of some important and relevant facts; or
> >
> > (c) The decision was based upon an obvious and substantial error of fact or law, or a Decision of the Board has intervened with which the prior award

14

>>conflicts; or
>
>>(d) A full and fair hearing was not
>>    afforded in the prior case;
>
>the arbitrator is bound to apply the prior award even
>though he would not have decided the prior case in that
>fashion. The burden to establish one of the
>exceptional circumstances is on the party resisting the
>application of the prior award and that burden is met
>only by clear and convincing evidence and argument.

(ARB 78-24 at 2-3).

Colony Bay contends, <u>inter alia</u>, that this award and the Parkinson award lack the necessary identity of facts and applicable contract provisions. These very issues, however, were before Arbitrator Barrett and well within his purview. Insofar as his contrary findings are factual in nature, they are not subject to alternation now. To the extent they are conclusions in service of his role as the neutral interpreter of the Agreement, which incorporates ARB 78-24, they draw their essence therefrom. In any event, Colony Bay's challenge is practically foreclosed by circuit precedent:

>[T]here is solid, well-reasoned case law holding that
>the preclusive effect of a prior arbitral award is
>itself a question for arbitration. In addition to the
>Third Circuit cases mentioned above, the Fifth Circuit
>has stated that "[w]hether [a prior] award can be given
>an effect akin to <u>res judicata</u> or stare decisis with
>regard to future disputes . . . neither the district
>court nor this court should decide. If the parties do
>not agree, that issue itself is a proper subject for
>arbitration." The First Circuit also has endorsed this

15

>position in a recent decision. The district court below in the present case considered the question and adopted the view of the Third and Fifth (and now First) Circuits. We agree.

<u>Little Six Corp. v. United Mine Workers of Am.</u>, 701 F.2d 26, 29 (4th Cir. 1983).

Arbitrator Barrett evaluated the requirements of ARB 78-24 to determine whether the Parkinson award was <u>res judicata</u> of the issues before him. He noted that the testimony before Arbitrator Parkinson was similar to that developed before him, establishing like facts, and he determined that the applicable contract section was IA(a). At bottom, Arbitrator Barrett did his job under the Agreement, and it is not the function of this court to determine whether he did it well, correctly, or even reasonably.[6]

---

[6]Colony Bay also appears to contend that Arbitrator Barrett erred in according preclusive effect to the Parkinson award by failing to address the application of Article IA(i), which governs the construction of mine or mine-related facilities. Arbitrator Barrett noted the provision in his award and at least considered its potential applicability. (Arb. Decis. at 12 (stating Colony Bay's position as "whether the work in dispute is 'construction work' . . . under IA(i) rather than Article IA(a) work" and then suggesting the same issue was present in the instant case, but resolved contrary to Colony Bay pursuant to the Parkinson award)). From the perspective of a reviewing court, the arbitrator did all that he was required to do.

16

### 2. ARB 78-60

Colony Bay next asserts that the award ignores binding ARB precedent, namely ARB 78-60. Colony Bay contends ARB 78-60 authorizes the contracting of face-up work. Arbitrator Barrett explicitly considered the decision within the context of Colony Bay's contention that the ARB decision was ignored by the Parkinson award. (ARB Dec. at 15 ("The Employer asserts that ARB 78-60 was ignored because in that case face-up work was found to be construction. However that was not the ruling. Instead, the work was found to be mixed in nature, but the overall character of the work as construction.")). Arbitrator Barrett additionally noted that the determination of what work constitutes construction is a "very close call." (Id.) Arbitrator Barrett thus devoted his attention to ARB 78-60 but concluded that it was distinguishable. His conclusion draws its essence from the governing accord and reversal on this ground is plainly inappropriate.

### 3. The "Cease and Desist" Order

After fully discussing the grievances, the award provides as follows:

17

> the Employer, in whatever corporate form it exists, shall cease and desist from its non-compliance with its contractual obligation to assign the work, of the type in issue, to Local 9177 employees; and
>
> Should the Employer not do so and the Union seeks redress through arbitration and successfully proves that the Employer has not ceased or desisted, this arbitrator believes that the Arbitrator in such matter should be allowed, given the repeated similar situations over a long period of time, to consider requests by the Union to recover such direct costs and damages it has incurred as the result of such conduct.

(Arb. Dec. at 17.)

The Agreement provides that the arbitrator's decision "shall govern only the dispute before him." (Agreement, Art. XXIII(c)(4)). Based upon that Agreement language, Colony Bay asserts that the foregoing remedy is beyond Arbitrator Barrett's authority and provides a means in future disputes for the union to bypass the grievance procedure in favor of filing actions in federal court seeking enforcement of the award. It is noteworthy that the union does not read the award so broadly. (Defs.' Resp. at 7 ("[T]his award does not dispense with future arbitrations or automatically result in federal court contempt proceedings. Instead, it merely <u>suggests</u> that future arbitrators, after finding violation, consider the Company's blatant and continuing pattern of violating" the Agreement)). The court concurs with

18

the union's narrow reading.[7] The chosen, conditional language does not warrant vacatur.

V.

For the reasons stated herein, it is ORDERED that plaintiff's motion be, and it hereby is, denied. It is further ORDERED that defendants' motion be, and it hereby is, granted. It is further ORDERED that the award be, and it hereby is, confirmed.

---

[7]For this reason, the union's public policy argument likewise fails. Our court of appeals has also observed the stringent rules governing public-policy challenges:

> Federal courts can refuse to enforce an arbitrator's award because it is contrary to public policy, but courts should be reluctant to do so. The Supreme Court has held that in order to vacate an award on public policy grounds, it must find that an explicit, well-defined public policy exists and the policy is one that specifically militates against the relief ordered by the award.

District 17, 179 F.3d at 139. The court notes Colony Bay offers no authority stating that an arbitral cease and desist award violates public policy.
    This consideration aside, however, the award merely directs that, should Colony Bay not cease and desist, a future arbitrator "should be allowed to consider requests by the Union to recover . . . direct costs and damages it has incurred as the result of such conduct." (Arb. Decis. at 16). The "remedy" is hence nothing more than a suggestion, saved for another arbitrator on another day.

The Clerk is directed to forward copies of this order to all counsel of record.

DATED: September 19, 2006

John T. Copenhaver, Jr.
United States District Judge